UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STACY CALES, *et al.*,

      **Plaintiffs,**

  v.                                                          Civil Action 2:23-cv-2997
                                                                            Magistrate Judge Chelsey M. Vascura

THEISEN BROCK, LPA, *et al.*,

      **Defendants.**

**OPINION AND ORDER**

Stacy Cales ("Plaintiff Cales") and Road to Recovery, LLC ("RTR") (collectively, "Plaintiffs") filed this diversity action against Theisen Brock, LPA ("Thiesen"), and Kristopher Justice, Jr. ("Defendant Justice") (collectively, "Defendants"), asserting one claim of legal malpractice and one claim of vicarious liability. The parties consented to the jurisdiction of the Magistrate Judge under 28 U.S.C. § 636(c). The case is before the Court on the parties' cross-motions for summary judgment (ECF Nos. 32, 33), which have been fully briefed (ECF Nos. 36, 38, 35, 37.) For the following reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 32) and **DENIES** Plaintiffs' Motion for Summary Judgment (ECF No. 33).

        I.      BACKGROUND

Plaintiff Cales, a nurse practitioner in West Virginia, owned RTR, a West Virginian business that operated as a drug rehabilitation clinic. (Pls.' Mot. for Summ. J. 1, ECF No. 33.) In 2020, she sought to sell RTR to a buyer in West Virginia. (Cales Dep. 29:8–12.)

To handle the sale, Plaintiff Cales hired Defendant Justice, an attorney licensed in West Virginia and Ohio, who worked at Theisen, a law firm that has an Ohio office. (Pls.' Mot. for

Summ. J. 1, ECF No. 33.) Defendant Justice drafted the sales documents, including a Promissory Note, which outlined the payment terms for the purchase of RTR—an initial payment of $18,000, followed by 60 monthly payments equal to 50% of RTR's gross monthly revenues. (Justice Dep. 16:6–19; Pls.' Mot. for Summ. J. Ex. 4, ECF No. 33, PAGEID # 1000.) Based on RTR's past earnings, Plaintiff Cales anticipated that the total sale price would reach between two and three million dollars. (Pls.' Mot. for Summ. J. 2, ECF No. 33.)

Section 2 of the Promissory Note stated that if the buyer failed to make a monthly payment, it would constitute an "Event of Default." (Pls.' Mot. for Summ. J. Ex. 4, ECF No. 33, PAGEID # 1001.) Section 3 specified that upon default, the buyer would owe "liquidated damages" calculated by multiplying $2,500 by the remaining number of months in the 60-month term. (*Id.*)

Plaintiff Cales testified that she was concerned that this provision could allow the buyer to stop paying the agreed monthly percentage of RTR's revenue and instead pay only $2,500 per month. (Cales Dep. 110:2–16.) She further testified that she raised this concern in a phone call with Defendant Justice while he was drafting the documents. (*Id.*) According to Plaintiff Cales, Defendant Justice reassured her that this was "not the spirit or intent of the contract." (*Id.*) She also testified that the substance of this discussion was later documented in an email exchange. (*Id.* 110:22–111:4; Pls.' Mot. for Summ. J. Ex. 6, ECF No. 33, PAGEID ## 1013–15.)

According to Plaintiff Cales, the sales documents were executed in October or November 2020. (Pls.' Mot. for Summ. J. 3, ECF No. 33.) For the first eight months, the buyer made monthly payments between $17,000 and $23,000. (Cales Dep. 62:4–7.) But before the ninth payment, the buyer informed Plaintiff Cales that she was "upside down in taxes." (*Id.* 47:18–48:1.) Shortly thereafter, the Plaintiff received a letter dated August 11, 2021, from the buyer's

newly retained counsel, stating that the buyer would cease making payments due to a federal investigation into RTR's operations. (*Id*. 58:1–4; Pls.' Mot. for Summ. J. Ex. 7, ECF No. 33, PAGEID ## 1016–17.) After Plaintiff Cales received this letter, Defendant Justice communicated with the buyer's counsel on her behalf, but he told Plaintiff Cales that another lawyer at Thiesen, Attorney Schwendeman, could handle filing a lawsuit against the buyer for non-payment. (Cales Dep. 58:14–20; 65:15–66:14; Defs.' Mot. for Summ. J. n.4 20, ECF No. 32.)

On October 19, 2021, Plaintiff Cales, represented by Attorney Schwendeman, sued the buyer in West Virginia state court ("the West Virginia action"). (Pls.' Mot. for Summ. J. 4, ECF No. 33.) Plaintiff Cales indicated that after the West Virginia action was filed, Attorney Schwendeman "was running the ship" and that he "pretty much took [her case] over." (Cales Dep. 66:23–67:4; 77:23–78:2.)

On November 8, 2021, the buyer filed an Answer in the West Virginia action and asserted nineteen affirmative defenses. (Pls.' Mot. for Summ. J. 4, ECF No. 33.) Plaintiff Cales reviewed the Answer around the time it was filed. (Cales Dep. 68:13–18; 70:9–11.) The sixteenth defense explicitly asserted that Plaintiff Cales' damages were limited to the liquidated damages provision in Section 3 of the Promissory Note—the very provision about which Plaintiff Cales had previously expressed concern. (Compl., ECF No. 1–9, PAGEID # 155.)

Plaintiff testified that after the buyer's Answer was filed, it seemed like her new attorney, Attorney Schwendeman, "felt that the [sales] contract was weak," and he "couldn't defend it." (Cales Dep. 77:5–78:6–9.) Plaintiff Cales was also unhappy about the slow progress of the litigation. (*Id*. 18–19.) As a result, in March 2022, Plaintiff Cales terminated her relationship

with Attorney Schwendeman. (*Id*. 77:18–22; 80:18–81:7.) That same month, she retained a third attorney, Attorney Cosenza, who was not associated with Thiesen. (*Id*. 80:18–81:7.)

More than a year later, in April 2023, Attorney Cosenza informed Plaintiff Cales that her recovery would be limited to the liquidated damages described in Section 3 of the Promissory Note. (Cales Dep. 85:6–12.) On September 19, 2023, Plaintiffs brought this diversity action against Defendant Justice, who drafted the sales documents, for legal malpractice and Theisen, for vicarious liability.

## II.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf*. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255 (citation omitted). "But in order to survive a summary-judgment motion, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, the non-movant must offer evidence "such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

## III. DISCUSSION

Defendants assert that Plaintiffs' claims are barred by Ohio's one-year statute of limitations. The Court agrees.

**A.** **Ohio's statute of limitations governs Plaintiffs' malpractice claim.**

As a preliminary matter, the parties dispute which statute of limitations applies. Defendants contend that Ohio substantive law governs Plaintiffs' malpractice action because the legal work done by Defendant Justice for Plaintiff Sales was performed in Ohio by an Ohio attorney at a law firm's Ohio offices. (Defs.' Mot. for Summ. J. 18, ECF No. 32.) Therefore, Defendants reason, Ohio's procedural one-year statute of limitation should also govern. (*Id*.) On the other hand, Plaintiffs contend that West Virginia's substantive law, and thus West Virginia's procedural two-year statute of limitations, governs this action because the sales documents drafted by Defendant Justice specify that West Virginia law applies to disputes related to the sale of RTR. (Pls.' Mem. in Opp'n 10–11, ECF No. 36.) Plaintiffs further highlight that Defendant Justice's legal work involved drafting documents for the sale of a West Virginia business to a West Virginia buyer. (*Id*.) Defendants correctly counter, however, that although Defendant Justice drafted the sales documents, Defendants are strangers to the sales agreement between Plaintiff Cales and RTR's buyer. (Defs.' Reply 4–5, ECF No. 38.)

5

The Court need not decide which state's substantive law applies because, regardless, Ohio's statute of limitations controls. Under *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), a federal court sitting in diversity applies the choice-of-law rules of the state in which it sits—in this case, Ohio. Pursuant to traditional conflict of law analyses, when Ohio is the forum state, Ohio's statute of limitations is applied to a state-law claim even when the substantive laws of another state would provide the rules of decision for that claim. *Schwartz v. Cincinnati Museum Ass'n*, 35 F. App'x 128, 131 (6th Cir. 2002) (quoting *Charash v. Oberlin College*, 14 F.3d 291, 299 (6th Cir. 1994)). Under that approach, even if West Virgina law governed Plaintiffs' malpractice claim, Ohio's one-year statute of limitation would apply.

Nevertheless, for tort claims,[1] Ohio has adopted a so-called "borrowing" statute which provides that:

> No tort action . . . that is based upon a cause of action that accrued in any other state . . . may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state . . . has expired or the period of limitation that applies to that action under the laws of this state has expired.

Ohio Rev. Code § 2305.03(B). "In other words, at least as to statutes of limitations, the rule in Ohio is that, if another state's substantive law applies to the underlying claim, then Ohio courts must use the shorter limitations period, as between Ohio's and that of the other state." *Niederst v. Minuteman Cap., LLC*, No. 1:23-CV-117, 2024 WL 3522413, at *10 (N.D. Ohio July 24, 2024) (quoting *Rose v. Bersa*, No. 1:17-CV-252, 2020 WL 5210913, at *10 (S.D. Ohio Aug. 31, 2020)) (cleaned up).

---

[1] Plaintiffs note in passing that under West Virginia law, legal malpractice claims may sound in contract or tort (Pls.' Mem. in Opp'n 7 n.2, ECF No. 36), but they exclusively assert a legal malpractice claim based on negligence in their briefing (Pls.' Mot. for Summ. J. 6–7, ECF No. 33).

Therefore, even if West Virginia substantive law governs Plaintiffs' malpractice claim, Ohio's one-year statute applies because it is shorter than West Virginia's two-year statute.

**B.     Plaintiffs' legal malpractice claim against Defendant Justice is untimely.**

The statute of limitations for malpractice claims in Ohio is one year after the cause of action accrues. O.R.C. § 2305.11(A).

> [A]n action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

*Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 58 (1989). A malpractice claim thus accrues at the later of two occurrences: a cognizable event (the discovery rule) or the end of the attorney-client relationship for the transaction (the termination rule). *See Smith v. Conley*, 109 Ohio St.3d 141, 142 (2006). Plaintiffs' malpractice claim against Defendant Justice is untimely under either rule.

**1.     The claim is untimely under the termination rule.**

Under the termination rule, the statute of limitations begins to run "when the attorney-client relationship for that particular transaction or undertaking terminates." *Waite, Schneider, Bayless & Chelsey Co., L.P.A. v. Davis*, No. 1:11CV851, 2015 WL 1321744, at *5 (S.D. Ohio Mar. 24, 2015) (quoting *Omni–Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385, 388 (1988)). "Stated differently, the statute of limitations is tolled from the date of . . . the alleged malpractice until the representation terminates." *Id*. (quoting *Johnson v. Lapin*, No. 3:93-CV-7521, 1995 WL 681102, at *1 (N.D. Ohio Oct. 24, 1995)).

For purposes of the termination rule, a particular transaction "encompasses all dealings related to the proceeding in which the malpractice occurred that are not of a general nature." *Id*.

7

at *6 (quoting *Slavens v. Spetnagel*, No. 95CA769, 1996 WL 422499, at *5 (Ohio Ct. App. July 26, 1996)). The tolling period starts when a specific transaction concludes, rather than when general representation ends, to prevent a client who is aware of potential malpractice from unfairly prolonging an attorney's exposure to suit. *See F.D.I.C. v. Alexander*, 78 F.3d 1103, 1109–1110 (6th Cir. 1996) (quoting *Omni-Food*, 38 Ohio St.3d at 387–88).

  Defendants contend that the attorney-client relationship between Plaintiff Cales and Defendant Justice ended when the sales documents were executed by Plaintiff Cales and RTR's buyer in October or November 2020. (Defs.' Mot. for Summ. J. 19, ECF No. 32.) Plaintiffs do not directly dispute this contention but instead note that another lawyer at Thiesen, Attorney Schwendeman, continued to represent Plaintiff Cales and filed her lawsuit against RTR's buyer in October 2021. (Pls.' Mem. in Opp'n 12, ECF No. 36.) Under Ohio law, however, "continuing representation of a client by a firm acting through several successive individual attorneys cannot extend the time to sue for alleged malpractice by any one of those individual attorneys." *Zell v. Klingelhafer*, 751 F. App'x 641, 647 (6th Cir. 2018) (citing *Fisk v. Rauser & Assoc. Legal Clinic Co. LLC*, No. 10AP–427, 2011 WL 5082232, at *4 (Ohio Ct. App. Oct. 25, 2011)). Moreover, the malpractice alleged in Plaintiffs' Complaint is exclusively predicated on a challenge to the language in the sales documents drafted by Defendant Justice. (*See* Compl. ECF No. 1, PAGEID # 7.) Accordingly, pursuant to Ohio's termination rule, the statute of limitations began running when the sales documents were executed in October or November 2020, and it expired one year later, in October or November 2021. Because Plaintiffs did not file their malpractice claim against Defendant Justice until September 19, 2023, that claim is untimely if the execution date was also the termination date.

8

Even if the Court were, however, to find that the attorney-client relationship between Plaintiff Cales and Defendant Justice continued after the sales documents were executed, Plaintiff Cales testified that after the West Virginia action was filed on October 19, 2021, Attorney Schwendeman "was running the ship" and that he "pretty much took [her case] over." (Cales Dep. 66:23–67:4; 77:23–78:2.) Therefore, even if all facts are construed in Plaintiffs' favor, the relevant relationship terminated at the latest on October 21, 2021. Under Ohio's termination rule, the statute of limitations began running then, and it expired on October 21, 2022. Plaintiffs, however, filed their malpractice claim against Defendant Justice on September 19, 2023. Thus, if the beginning of the West Virginia action also marks the end of Defendant Justice's representation, the claim is untimely.

Because Plaintiffs' malpractice claim against Defendant Justice is untimely under either possible termination date—the execution date or commencement of the West Virginia action—the claim is untimely under the termination rule.

### 2. The claim is untimely under the discovery rule.

Plaintiffs' malpractice claim against Defendant Justice is also untimely under the discovery rule, which provides that the statute of limitation begins to run when there is a cognizable event. A cognizable event is defined as "an event that places a reasonable person on notice that a 'questionable legal practice may have occurred,'" and that the person might need to take legal action against his or her attorney. *Ohio Fresh Eggs, LLC v. Smith & Kramer, P.C.*, No. 2:20-CV-5267, 2021 WL 3076397, at *5 (S.D. Ohio July 21, 2021) (quoting *Werts v. Penn*, 164 Ohio App.3d 505, 510, (Ohio Ct. App. 2005)). Simply put, a cognizable event occurs when a reasonable client would have perceived "mistakes in lawyering." *Id.* (quoting *Omlin v. Kaufman & Cumberland Co., L.P.A.*, 8 F. App'x 477, 479 (6th Cir. 2001)). It is an event which "puts the

9

plaintiff on notice to investigate the facts and circumstances relevant to his or her claim in order to pursue remedies." *Id*. (quoting *Tom Raper Homes, Inc. v. Mowery & Youell, Ltd.*, No. 2:07-cv-123, 2008 WL 4221995, at *2 (S.D. Ohio Sept. 15, 2008)).

Defendants contend that a cognizable event occurred on November 8, 2021, when RTR's buyer filed an Answer in the West Virginia action and asserted the liquidated damages clause as an affirmative defense against Plaintiff Cales' breach of contract claims. (Defs.' Mot. for Summ. J. 19–20, ECF No. 32.) Alternatively, they contend that a cognizable event occurred in March 2022, when Plaintiff Cales ended her relationship with Attorney Schwendeman, who represented her in the West Virginia action. (*Id*. at 20–21.) The Court agrees with the latter.

Under Ohio law, an affirmative defense raised in an answer can, in some instances, constitute a cognizable event. For example, in *Jackson v. Greger*, the plaintiff alleged that her criminal defense attorneys advised her to plead guilty without informing her that doing so would foreclose her ability to pursue excessive force claims related to her arrest. No. 23571, 2010 WL 2706315, at *2 (Ohio Ct. App. July 9, 2010). Defendants in the plaintiff's subsequent excessive force lawsuit asserted collateral estoppel as a defense in their answer and successfully moved for summary judgment on those grounds. *Id*. When the plaintiff later sued her criminal defense attorneys for malpractice for failing to fully inform her about the effects of her guilty plea, an Ohio Court of Appeals held that the assertion of the collateral estoppel defense in the answer in the excessive force case constituted a cognizable event, because it should have alerted the plaintiff to her need to pursue possible remedies against her criminal defense attorneys. *Id*. at *7. *See also*, *Rayess v. McNamee*, No. 25915, 2014 WL 2169928, at *6 (Ohio Ct. App. May 23, 2014) (finding that a cognizable event occurred when an opposing party in an underlying lawsuit

10

filed an answer asserting the statute of limitations as an affirmative defense because it should have put the plaintiff on notice of a potential legal malpractice action).

Plaintiffs nevertheless contend that a liquidated damages defense "buried" in an Answer was not enough to alert Plaintiff Cales that Defendant Justice's lawyering may have fallen short. They stress that she is a nurse, not an attorney, who relied on counsel to explain pleadings. (Pls.' Mem. in Opp'n 11, ECF No. 36.) But Ohio's discovery rule does not require a plaintiff to have actual notice that an attorney's conduct was malpractice. *Alexander,* 78 F.3d at 1107. Rather, "Ohio law requires only '*constructive* knowledge of facts, rather than *actual* knowledge of their legal significance . . . to start the statute of limitations running.'" *Id.* (emphasis original) (quoting *Flowers v. Walker,* 63 Ohio St.3d 546, 589 (1992)).

Plaintiffs further contend that if RTR's liquidated damages defense in the Answer filed in the West Virginia action sufficiently put Plaintiff Cales on notice of her malpractice claim, then her attorney in that case, Attorney Schwendeman, must also have been put on notice of the claim, and he had a duty to inform her about it. (Pls.' Mem. in Opp'n 12–13, ECF No. 36.) Plaintiffs' Complaint does not, however, allege that Attorney Schwendeman committed malpractice or seek recovery based on that theory.

Plaintiffs additionally contend that equitable tolling saves her malpractice claim because Defendants fraudulently concealed flaws in the sales documents. (Pls.' Mem. in Opp'n 13–14, ECF No. 36.) Fraudulent concealment can serve as a ground for equitable tolling, but it is "only available in compelling cases which justify a departure from established procedure." *Perkins v. Falke & Dunphy, L.L.C.*, No. 25162, 2012 WL 6097104, at *3 (Ohio Ct. App. Dec. 7, 2012) (internal quotations omitted). To invoke this doctrine, a plaintiff must show that (1) "the defendant engaged in a course of conduct to conceal evidence of the defendant's wrongdoing,"

11

and (2) "that the plaintiff, despite the exercise of due diligence, failed to discover the facts supporting the claim." *Id.* In short, a plaintiff seeking equitable tolling "must demonstrate that [she] diligently pursued [her] rights, but some extraordinary circumstance stood in [her] way and prevented timely action." *Lottridge v. Gahanna-Creekside Invs., L.L.C.*, 36 N.E.3d 744, 753 (Ohio Ct. App. 2015). Plaintiffs, however, fail to point to any record evidence demonstrating that Defendants attempted to conceal evidence of wrongdoing.

Regardless of whether RTR's assertion of a liquidated damages defense in the Answer filed in the West Virginia action constitutes a cognizable event, Plaintiff Cales' decision to terminate Attorney Schwendeman and hire a third lawyer in March 2022 does. The record establishes that all the following had occurred by that date: Plaintiff Cales had expressed concerns about the liquidated damages clause while the sales documents were being drafted by Defendant Justice; Plaintiff Cales had received and reviewed the Answer in the West Virginia action, which explicitly invoked the liquidated damages clause as a defense; Plaintiff Cales suspected that Attorney Schwendeman believed the sales documents were "weak," and that it was "almost like [he] couldn't defend" them in the West Virginia action. Indeed, Plaintiff Cales ultimately replaced Attorney Schwendeman with new counsel in March 2022 because he did not seem to be mounting a vigorous defense.

Thus, the record establishes that by March 2022, even if Plaintiff Cales was not certain that the liquidated damages provision limited her recovery, she had sufficient reason to question whether the sales documents had been poorly drafted and to investigate further. Notably, although Defendants alternatively contend that Plaintiff Cales' March 2022 decision to change attorneys constituted a cognizable event, Plaintiffs have not responded to this argument.

Accordingly, the Court finds that under the discovery rule, the statute of limitations began running in March 2022 and expired in March 2023. Because Plaintiffs did not file their malpractice claim against Defendant Justice until September 19, 2023, the claim is untimely.

**C.     Because Plaintiffs' malpractice claim against Defendant Justice is untimely, Plaintiffs' vicarious liability claims against Thiesen are untimely.**

Under well settled principles, for a principal to be vicariously liable, an agent must be liable. *See*, *e.g., Soltis v. Wegman, Hessler, Vanderburg & O'Toole,* No. 69602, 1997 WL 64049, at *3 (Ohio Ct. App. Feb. 13, 1997) (holding that "[a]bsent negligence on the part of [the defendant lawyer] as an employee, the law firm and its principals as the employer cannot be held liable"); *Dunn v. Rockwell*, 225 W. Va. 43, 62 (2009) (explaining that "[b]ecause the employer may only be held liable to the extent that the employee can be held liable, and only for acts committed by the employee in the course of his or her employment, the statute of limitation applicable to an employer is determined by the act of the employee"). Because Plaintiffs' malpractice claim against Defendant Justice is untimely, Thiesen cannot be held vicariously liable for Defendant Justice's alleged malpractice.

## IV.     CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment (ECF No. 32) is **GRANTED**, and Plaintiffs' Motion for Summary Judgment (ECF No. 33) is **DENIED**. Plaintiffs' legal malpractice and vicarious liability claims against Defendants Justice and Theisen are **DISMISSED**.

**IT IS SO ORDERED.**

*/s/ Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE