UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STACY CALES, *et al.*,

      **Plaintiffs,**

  **v.**
                                     **Civil Action 2:23-cv-2997**
                                     **Magistrate Judge Chelsey M. Vascura**

THEISEN BROCK LPA, *et al.*,

      **Defendants.**

## OPINION AND ORDER

Plaintiffs, Stacy Cales and Road to Recovery, LLC, filed this diversity action against Defendants Theisen Brock, LPA, and Kristopher Justice, asserting one claim of legal malpractice and one claim of vicarious liability. The parties consented to the jurisdiction of the Magistrate Judge under 28 U.S.C. § 636(c). The case is before the Court on the parties' cross-motions for summary judgment (ECF Nos. 53–54). For the following reasons, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment (ECF No. 53) and **DENIES** Defendants' Motion for Summary Judgment (ECF No. 54).

## I.      BACKGROUND

The relevant facts are undisputed. Cales, a nurse practitioner in West Virginia, owned Road to Recovery LLC ("RTR"), a West Virginia business operating a drug rehabilitation clinic. (Pl.'s Mot. for Summ. J. 1, ECF No. 53.) In 2020, Cales sought to sell RTR to a buyer in West Virginia. (Cales Dep. 29:8–12, ECF No. 30-1.)

To handle the sale, Cales hired Defendant Justice, an attorney licensed in West Virginia and Ohio, who worked for Defendant Theisen Brock, LPA, at an office in Marietta, Ohio. (Pls.' Mot. for Summ. J. 1, ECF No. 53.) The buyer was unrepresented by counsel for the sales transaction. Justice drafted the sales documents, including a Promissory Note, which outlined the payment terms for the purchase of RTR: an initial payment of $18,000, followed by 60 monthly payments equal to 50% of RTR's gross monthly revenues. (Justice Dep. 16:5–19, ECF No. 34-1; Promissory Note, ECF No. 1-9, PAGEID #206–09.) Based on RTR's past earnings, Cales anticipated that the total sale price would reach between $2–3 million. (Cales Dep. 101:2–8, ECF No. 30-1.)

Section 2 of the Promissory Note stated that if the buyer failed to make a monthly payment, it would constitute an "Event of Default." (§ 2(p), ECF No. 1-9, PAGEID #207.) Section 3 specified that upon default, the buyer would owe "liquidated damages" calculated by multiplying $2,500 by the remaining number of months in the 60-month term. (*Id.*, § 3.) In other words, the maximum amount of liquidated damages available under this provision was $159,000.

Cales was concerned that this provision could allow the buyer to stop paying the agreed monthly percentage of RTR's revenue and instead pay only $2,500 per month. (Cales Dep. 110:2–16, ECF No. 30-1.) She raised this concern in a phone call with Justice while he was drafting the documents. (*Id.*) According to Cales, Justice reassured her that this was "not the spirit or intent of the contract." (*Id.*) The substance of this discussion was later documented in an email exchange, in which Justice assured Cales that that the liquidated damages provision was intended to apply only if the buyer ceased business operations and that the duty of good faith and fair dealing would prevent the buyer from strategically breaching the contract. (ECF No. 53-1, PAGEID #1378–80.)

2

The sales documents were executed on November 1, 2020. (Sales Documents, ECF No. 1-9.) For the first eight months, the buyer made monthly payments between $17,000 and $23,000. (Cales Dep. 62:4–7, ECF No. 30-1.) But before the ninth payment, the buyer informed Cales that she was "upside down in taxes." (*Id*. 47:18–48:1.) Shortly thereafter, the Plaintiff received a letter dated August 11, 2021, from the buyer's newly retained counsel, stating that the buyer would cease making payments due to a federal investigation into RTR's operations. (Letter, ECF No. 53-1, PAGEID #1381–82.) After Cales received this letter, Justice communicated with buyer's counsel on her behalf, but he told Cales that another lawyer at Thiesen Brock, LPA, could handle filing a lawsuit against the buyer for non-payment. (Cales Dep. 58:14–20; 65:25–66:14.)

On October 19, 2021, Cales, represented by another Theisen Brock attorney (Adam Schwendeman), sued the buyer in West Virginia state court ("the West Virginia action"). (Pls.' Mot. for Summ. J. 4, ECF No. 53.) On November 8, 2021, the buyer filed an Answer in the West Virginia action and asserted nineteen affirmative defenses. (ECF No. 1-9, PAGEID #143–56.) The sixteenth defense explicitly asserted that Cales' damages were limited to the liquidated damages provision in Section 3 of the Promissory Note—the very provision about which Cales had previously expressed concern. (*Id.*)

After the buyer's Answer was filed, it seemed to Cales like her new attorney, Attorney Schwendeman, "felt the [sales] contract was weak." (Cales Dep. 77:5–78:6.) She felt he "couldn't defend [the contract]." (*Id*. 78:8–9.) Cales was also unhappy about the slow progress of the litigation. (*Id*. 78:18–19.) As a result, in March 2022, Cales terminated her relationship with Attorney Schwendeman. (*Id*. 77:18–23; 80:18–81:7.) That same month, she retained a third attorney, Attorney Cosenza, who was not associated with Thiesen Brock. (*Id*. 80:18–81:7.)

3

More than a year later, in April 2023, Attorney Cosenza informed Cales that her recovery would be limited to the liquidated damages described in Section 3 of the Promissory Note. (Cales Dep. 85:6–12.) Cales eventually settled with the buyer for the amount of outstanding liquidated damages as calculated in § 3 of the Promissory Note. (Settlement Agreement, ECF No. 30-4.)

On September 19, 2023, Plaintiffs commenced action against Justice and Theisen Brock. (Compl., ECF No. 1.) Plaintiffs contend that Justice committed malpractice by "failing to properly draft the [sales contract] to include an election of remedies clause, or such other language such that Plaintiffs would not have been forced to accept liquidated damages in the event of a default, but instead could have recovered all of their actual damages." (*Id.* ¶ 21.) Plaintiffs also contend that Theisen Brock is vicariously liable for Justice's malpractice under the doctrine of *respondeat superior*. (*Id.* ¶ 25.) The parties have now filed cross-motions for summary judgment. (ECF Nos. 53–54.)

## II.     SUMMARY JUDGMENT STANDARDS

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn

in his favor." *Id*. at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

### III.     ANALYSIS

The Court must first determine which state's law applies to Plaintiffs' malpractice claim. A federal court sitting in diversity must apply the choice-of-law rules of the forum state—in this case, Ohio. *See Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 389 (6th Cir. 2017). Ohio has adopted the view of the Restatement of the Law of Conflicts for tort actions. *Morgan v. Biro Mfg. Co.*, 15 Ohio St. 3d 339, 341–42 (1984). According to the Restatement, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . ." Restatement (Second) of Conflict of Laws § 145 (1971).

Here, although Defendants are located in Ohio, that is where Ohio's connection to this case begins and ends. Justice provided advice to Plaintiffs, both located in West Virginia, on matters of West Virginia contract law in connection with the sale of a West Virginia business to a West Virginia buyer. West Virginia therefore has the most significant relationship to the underlying facts and West Virginia law applies to Plaintiffs' malpractice claim. *See Badgett v.*

*Schulman*, No. 3:12-cv-1135, 2016 WL 4196680, at *2 (N.D. Ohio Aug. 9, 2016) ("Michigan also has an interest in regulating attorneys located within the state, however this interest does not outweigh the fact that the parties' relationship in this case was centered in Ohio.").

Under West Virginia law, a claim of legal malpractice has three elements: "(1) the attorney's employment; (2) his/her neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff." *Rubin Res., Inc. v. Morris*, 237 W. Va. 370, 374 (2016). The first element is not in dispute. The second element requires this Court to interpret Plaintiffs' contract with the buyer to determine whether the liquidated damages cap in the Promissory Note precluded Plaintiffs from recovering their actual damages, and, if so, whether this failure in drafting constitutes neglect by Justice of his duty as Plaintiffs' attorney.

The sales contract comprises several documents: the Promissory Note (ECF No. 1-9, PAGEID #206–9), a Guaranty (ECF No. 1-9, PAGEID #210), an Asset Purchase Agreement (ECF No. 1-1), a Security Agreement (ECF No. 1-9, PAGEID #196–205), and a Pledge Agreement (ECF No. 1-9, PAGEID #211–18). The parties agree that the contract itself is governed by West Virginia law per the choice-of-law provisions in the Asset Purchase Agreement and the Security Agreement. (§ 9.2, ECF No. 1-1; § 11, ECF No. 1-9, PAGEID #196–202.) And under West Virginia law, all of these interrelated documents must be read and construed together as part of the same transaction. *See Antero Res. Corp. v. Directional One Servs. Inc. USA*, 246 W. Va. 301, 310–11 (2022). These documents provide for various remedies in the event of breach by the buyer. In addition to the liquidated damages provision in the Promissory Note, the Security Agreement also permits Plaintiffs to "immediately repossess the Collateral [defined to include the business assets purchased from Plaintiffs] and operate the Collateral as [their] own." (§ 8, ECF No. 1-9, PAGEID #201.) Similarly, the Pledge Agreement

6

allows Plaintiffs to "elect to take possession and ownership of the Pledged Collateral [defined to include membership interest in the buyer entity]." (§ 2(f), ECF No. 1-9, PAGEID #213.)[1]

Moreover, the documents include multiple cumulative remedies clauses. The Pledge Agreement provides that "[t]he rights and remedies provided herein and in all other agreements, instruments, and documents, are cumulative and are in addition to and not exclusive of any rights or remedies provided by law, including, but without limitation, the rights and remedies of a secured party under the Uniform Commercial Code." (*Id.* at § 8(c)). And the Security Agreement provides that "[a]ll remedies of [Plaintiffs] shall be cumulative to the fullest extent provided by law." (§ 8, ECF No. 1-9, PAGEID #201.) No part of the contract suggests that any one of the available remedies is exclusive of the others. And generally, in the absence of a contractual provision to the contrary, plaintiffs may select any remedy available to them at law. *See Mann v. Golub*, 182 W. Va. 523, 526, 389 S.E.2d 734, 737 (1989).

Thus, reading all parts of the contract together, it is clear that the Note's liquidated damages provision does not provide the only remedy available to Plaintiffs in the event of breach. Plaintiffs also had the option to repossess the business assets they had sold to the buyer, or to seize control of the buyer entity itself. The liquidated damages provision in the Promissory Note *does*, however, limit the amount of *damages* that Plaintiffs could recover when the buyer ceased making payments under the contract. Under West Virginia law, liquidated damages clauses preclude recovery of actual damages to the extent that the events causing the loss are

---

[1] Defendants also rely on § 4.8 of the Asset Purchase Agreement (ECF No. 1-1), providing Plaintiffs with monthly audit rights and a dispute resolution mechanism if Plaintiffs determined that the buyer's monthly payment did not accurately reflect 50% of the buyer's gross revenue. Because the breach in this case was the buyer's repudiation of the payment obligation altogether, and not a mere dispute about the amount of the monthly payment, the Court does not find the audit provisions of the Asset Purchase Agreement relevant to this case.

covered by the liquidated damages provision. *Cf. VanKirk v. Green Const. Co.*, 195 W. Va. 714, 719 (1995) ("[a] provision for liquidated damages will not prevent recovery for actual damages *for events which are not covered by the liquidated damages clause*, unless the contract expressly provides that damages other than those enumerated shall not be recovered.") (quoting *Meyer v. Hansen,* 373 N.W.2d 392, 395 (N.D. 1985)) (emphasis added). Here, the buyer's breach (failure to make payments under the Promissory Note) was squarely encompassed by the liquidated damages clause (applicable "upon the occurrence of an Event of Default," where "Event of Default" was defined to include "the failure to timely pay to Seller any installment of the Purchase Price"). It therefore cannot be said that the events for which Plaintiffs seek to recover actual damages are not covered by the liquidated damages clause. *Cf. VankKirk*, 195 W. Va. at 719 (liquidated damages clause applicable in the event of delay in completing construction contract work did not prevent recovery for actual damages for substantial costs incurred over and above the contract price). As a result, the amount of damages recoverable from the buyer was limited to the amount in the liquidated damages clause. Justice therefore failed to draft the sales contract documents to allow Plaintiffs to recover their actual damages for the buyers' breach.

Did this failure constitute a deviation from the accepted professional standards of professional care? The Court finds that it did. As Plaintiffs' expert noted, "the manner in which Defendants drafted the Purchase Agreement and the Note permitted (and even encouraged) [the buyer] to strategically default on its payment obligations." (Robey Report 4, ECF No. 20-2.) And "[b]y limiting [Plaintiffs'] remedies to liquidated damage—instead of affording [Plaintiffs] the full range of remedies otherwise available by law—Defendants failed to exercise that degree of skill and learning normally applied by members of the legal profession in similar circumstances."

8

(*Id.*)[2] Indeed, the problematic incentives created by the liquidated damages provision were sufficiently obvious that Cales, a non-attorney, foresaw the exact problem that led to this lawsuit. And Justice's response to Cales's concern—that a strategic breach would be prevented by the buyer's implied duty of good faith and fair dealing—was inaccurate. The implied duty of good faith has no effect when the contract contains an express provision governing the same subject matter. *Freeport Gas Coal Tr. v. Harrison Cnty. Coal Res., Inc.*, 662 F. Supp. 3d 594, 602 (N.D.W. Va. 2023) ("The presence of an inconsistent express term or provision on the same subject matter in a contract, however, 'excludes the possibility of an implied covenant of a different or contradictory nature.'") (quoting *Frederick Bus. Props. Co. v. Peoples Drug Stores, Inc.*, 191 W. Va. 235, 241 (1994)). The Court agrees with Plaintiffs' expert that "[t]he deficiencies with the Purchase Agreement and the Note should have been plainly obvious to any attorney of like experience under similar circumstances." (Robey Report 5, ECF No. 20-2.)

All that remains is the third element of Plaintiffs' malpractice claim: whether Justice's negligence resulted in and was the proximate cause of loss to Plaintiffs. This question is easily answered in the affirmative. Plaintiffs were injured by their inability to collect their actual damages, which are estimated to exceed the liquidated damages they did recover by $1–2 million. And that injury was directly caused by Justice's inartful drafting of the contract. Had

---

[2] Mr. Robey's opinion could be read to mean that his view of the sales contract was that Plaintiffs' sole remedy in the event of breach was liquidated damages, excluding even the non-damages remedies of repossession of the purchased assets or seizure of the buyer entity. Thus, Plaintiffs may not have submitted expert evidence that merely limiting Plaintiffs to liquidated damages (versus actual damages) was a deviation from the relevant standard of care. Expert evidence, however, is not always required in West Virginia to make out a legal malpractice claim. *Sheetz, Inc. v. Bowles Rice McDavid Graff & Love, PLLC*, 209 W. Va. 318, 334 (2001) (leaving the necessity or admissibility of expert testimony in legal malpractice cases to "the sound discretion of the court"); *see also First Nat. Bank of Bluefield v. Crawford*, 182 W. Va. 107, 112 n.9 (1989) ("[I]f the lack of professional skill is obvious, expert testimony is not needed.").

Justice limited the liquidated damages provision to a situation in which the buyer ceased operating the purchased business, as apparently was Justice's intent, Plaintiffs would have been able to recover their actual damages when the buyer breached the contract under other circumstances.

Finally, under the doctrine of *respondeat superior*, Theisen Brock, LPA, is vicariously liable for Justice's malpractice. *See*, *e.g.*, *Zirkle v. Winkler*, 214 W. Va. 19, 21 (2003) (an employer is liable for an employee's negligent act, if the act is within the scope of employment). No party has disputed that Justice was an employee of Theisen Brock or that his drafting of the sales contract was outside the scope of his employment.

Defendants attempt to avoid this outcome by pointing to the non-damages remedies available to Plaintiffs under the sales contract. True, Plaintiffs could have repossessed the business assets they had sold to the buyer, or they could have seized control of the buyer entity itself. But these remedies are not a substitute for actual damages. These remedies would require Plaintiffs to either re-sell or re-commence operating the business they had just sold, requiring much more time, effort, and resources to recoup their losses than would a judgment against Defendants for actual damages. Moreover, Cales testified at deposition that she was not in a position to begin operating the business again at the time of the buyer's breach because she no longer had the necessary licensure and staff credentials and it would have taken her about five months to get the business up and running again. (Cales Dep. 73:10–74:12, ECF No. 30-1.) West Virginia does not require malpractice plaintiffs to undertake such laborious efforts to mitigate their damages. *See Rubin Res., Inc. v. Morris*, 237 W. Va. 370, 377–78 (2016) (malpractice plaintiff's duty to mitigate does not require "actions which are impractical, disproportionately

expensive, or likely futile," such as instituting litigation with its attendant costs and uncertainty of outcome).

Additionally, Defendants simply misread a provision of the Guaranty on which they rely. Defendants contend that "the Guaranty set forth in the Note specifically contradicts Plaintiffs' position that liquidated damages are the exclusive remedy" (Defs.' Mot. for Summ. J. 15, ECF No. 54), citing the following language:

> Jami Clay ("Guarantor"), in consideration of the undertakings and promises of [Plaintiffs] in the foregoing Note and the Purchase Agreement, agrees with and for the benefit of [Plaintiffs] that if [the buyer] at any time defaults in any payment due to [Plaintiffs] under the Purchase Agreement, the Note (**including, but not limited to, the Obligations or the Liquidated Damages Payment**), any Schedule to the Purchase Agreement, the Security Agreement or the Pledge Agreement, or in the performance of any covenant contained the Purchase Agreement, the Note, any Schedule to this Agreement, the Security Agreement or the Pledge Agreement, that such Guarantor will make such payment or perform such covenant, together with any arrears, costs or expenses suffered or incurred by [Plaintiffs]."

(Guaranty, ECF No. 1-9, PAGEID #210) (emphasis added by Defendants). But the bolded language refers to the possible types of *defaults* by the buyer; it does not refer to possible *remedies* available to Plaintiffs. The Guaranty simply states that if the buyer defaults on any of its obligations, the Guarantor will make the buyer's required payments. But because Plaintiffs could not collect actual damages from the buyer, the Guaranty creates no right to collect actual damages from the Guarantor. The Guaranty is thus of no assistance to Defendants.

In sum, on the undisputed facts before the Court, Plaintiffs have established that they are entitled to judgment as a matter of law as to liability on both claims in their Complaint.

## IV.    DISPOSITION

For these reasons, Plaintiffs' Motion for Summary Judgment (ECF No. 53) is **GRANTED** and Defendants' Motion for Summary Judgment (ECF No. 54) is **DENIED**. The Clerk is **DIRECTED** to enter judgment as to liability in favor of Plaintiffs. The parties are

**ORDERED** to confer and, **WITHIN FOURTEEN DAYS** of the date of this Opinion and

Order, provide via email to Vascura_Chambers@ohsd.uscourts.gov mutually available dates for

a telephone conference with the Court to discuss next steps. This case shall remain open.


      **IT IS SO ORDERED.**


          /s/ *Chelsey M. Vascura*
          CHELSEY M. VASCURA
          UNITED STATES MAGISTRATE JUDGE